**KROGER LIMITED PARTNERSHIP I, d/b/a Kroger L–327, Appellant,**

v.

**CABINET FOR HEALTH SERVICES, COMMONWEALTH OF KENTUCKY, Appellee.**

No. 2004–CA–001965–MR.

Court of Appeals of Kentucky.

Sept. 30, 2005.

Kenneth S. Handmaker, Bradley E. Cunningham, Louisville, KY, for appellant.

Michael Deep, Assistant Counsel, Office of Legal Services, Frankfort, KY, for appellee.

Before BARBER and JOHNSON, Judges; MILLER, Senior Judge.[1]

## OPINION

MILLER, Senior Judge.

Kroger Limited Partnership I, d/b/a Kroger L–327 (Kroger) appeals from an Opinion and Order of the Jefferson Circuit Court which upheld an order of the Secretary of the Cabinet for Health Services (Secretary). The Secretary's order affirmed the decision of the Administrative Law Judge (ALJ) suspending Kroger from participation in the Special Supplemental Nutrition Program for Women, Infants and Children (WIC)[2] program for one year on the basis that Kroger had sold unauthorized food items in violation of WIC program voucher redemption regulations.

Because there has been a material change in circumstances subsequent to the ALJ's decision which calls into doubt its ongoing soundness, we vacate and remand for additional proceedings in light of changed circumstances.

Kroger is located at 2710 West Broadway in Louisville, Kentucky. The store has been a long-time vendor in the WIC program. WIC receives 100% of its funds from the federal government. The Cabinet for Health Services, Commonwealth of Kentucky (Cabinet), through its Department of Public Health, administers the program. The program provides certain health and nutrition services to qualified participants. The participants are eligible pregnant, nursing, and post-partum women, infants, and children. The participants receive vouchers, which they then present to authorized food vendors pursuant to a contractual agreement between each vendor and the Cabinet. The vendor then receives reimbursement for the cost of the food items through a centralized WIC bank account.

The federal statutes and regulations under which the WIC program operates require that the Cabinet conduct covert, on-site compliance investigations of at least 5% of the authorized WIC vendors in the Commonwealth. *See* 7 C.F.R., part 246.12(j)(2). When conducting a compliance investigation, the Cabinet sends an investigator posing as a WIC participant to a participating store to purchase WIC authorized food items for the purpose of determining the extent of the vendor's compliance with the program requirements, and to collect evidence of program violations. In March and April of 2001 (March 26, April 4, April 9, April 18, and April 20) the Cabinet conducted five such compliance buys at Kroger. The buys were conducted by Cabinet investigator

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. WIC is administered pursuant to 42 USC § 1786, the "Child Nutrition Act of 1966," as amended Pub.L. No. 103–448, 108 Stat. 4699 (1994), and 7 C.F.R. Part 246. To effect the Program at the state level, it is administered by the Cabinet for Human Resources, Department of Health Services, pursuant to the federal statutes, regulations and guidelines; KRS 194A.050(1); and 902 KAR 4:040.

Beverly Turner, who posed as a WIC participant during the compliance buys.

As a result of the foregoing compliance buys, Turner prepared an investigative report, which, in part, stated as follows:

1. On March 26 and April 4, 2001, the actual purchase price was not entered on the WIC check at the time of purchase. This is a violation of 902 KAR 4:040, section 12(1)(a)1 (April 12, 2000). The penalty for a first offense of this nature is a written warning.

2. On March 26, April 4, April 9, April 18 and April 20, 2001, the WIC program was charged for supplemental food provided in excess of the quantity authorized by the WIC check. This is a violation of 902 KAR 4:040, section 12(1)(o)1 (April 12, 2000). The penalty for a first offense of this nature is a one (1) year disqualification of the vendor from the WIC program.

By letter dated June 29, 2001, the Cabinet notified Kroger of the alleged violations and the associated penalties.

Following the issuance of the report and notice to Kroger, on March 14 and 15, 2002, an administrative hearing was conducted concerning the alleged violations before the ALJ. On June 13, 2003, the ALJ issued his Findings of Fact, Conclusions of Law, and Recommended Decision.

The ALJ determined that the violations had occurred as described in the report, and recommended that the sanctions recommended by the Cabinet be imposed against Kroger, including a one-year suspension from the WIC program. On August 28, 2003, the Secretary issued a Final Order adopting as her own the recommended decision of the ALJ.

Kroger subsequently appealed the Secretary's Order to the Jefferson Circuit Court pursuant to KRS 13B.140. On August 25, 2004, the circuit court entered an Opinion and Order affirming the Secretary's Order. This appeal followed.

■■■■ The standard of review with regard to a judicial appeal of an administrative decision is limited to determining whether the decision was erroneous as a matter of law. *See American Beauty Homes Corporation v. Louisville & Jefferson County Planning & Zoning Commission,* 379 S.W.2d 450, 457 (Ky.1964). Where the ALJ determines that a party has satisfied his burden of proof with regard to a question of fact, the issue on appeal is whether substantial evidence supported the determination. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986). Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367, 369 (Ky. 1971). Although a party may note evidence which would have supported a different conclusion than that which the ALJ reached, such evidence is not an adequate basis for reversal on appeal. *McCloud v. Beth–Elkhorn Corp.,* 514 S.W.2d 46 (Ky. 1974). The crux of the inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law. *Special Fund v. Francis, supra,* at 643.

Kroger makes various arguments regarding why, on the merits, the ALJ's decision was incorrect, including that the Cabinet failed to follow its own mandatory procedures, that the Federal and State regulations relied upon by the Cabinet exceed the authority and language of the enabling legislation, and that the cashiers who rang-up the improper sales were not acting within the scope of their employment. However, based upon our disposi-

tion of this case, we need not address these issues on the merits.

902 KAR 4:040 § 13 provides that prior to suspending a store from participation in the WIC program, it must first analyze the impact of such a suspension on the local WIC participants who rely upon the store for their WIC purchases. The section states, in relevant part, as follows:

Participant Access Determination and Civil Money Penalty.

(1) Except for a violation specified in Section 12(1)(e) of this administrative regulation, prior to disqualifying a vendor for a violation specified in Section 12 of this administrative regulation, the WIC Program vendor manager shall determine if disqualification of the vendor will result in inadequate participant access.

(2) The determination and documentation of adequate participant access shall be made using the criteria provided in subsections (4) and (5) of this section.

(3) Mileage shall be measured by automobile odometer.

(4) There is adequate participant access, if:

(a) There is another vendor within seven (7) miles of the vendor; or

(b) There is another vendor between the subject vendor and a health department service site, and the other vendor is within seven (7) miles of the health department service site;

(c) There is no geographic barrier, such as an impassable mountain or river, between the subject vendor and the next accessible vendor; or

(d) The subject vendor is redeeming food instruments for formulas classified as special formulas and there is another vendor within seven (7) miles that can obtain the formula.

(5) If five (5) or more total food packages are redeemed by the subject vendor in the calendar month period immediately preceding the issuance of a sanction letter, the WIC coordinator shall be consulted to determine if a special circumstance exists that will result in inadequate participant access.

(6) If inadequate participant access is determined, a civil money penalty shall be assessed for a violation listed in Section 12 of this administrative regulation. The civil money penalty shall be calculated in accordance with the procedures outlined in the Vendor Manual, incorporated by reference.

(7) The WIC Program shall negotiate an installment plan for the collection of a civil money penalty.

(8) A vendor that fails to pay, partially pays, or fails to timely pay a civil money penalty, shall be disqualified for the length of time corresponding to the most serious violation.

902 KAR 4:040 § 13.

In his Findings of Fact, Conclusions of Law, and Recommended Decision, the ALJ made the following findings of fact and conclusions of law relevant to the impact of a one-year suspension of Kroger on participant access to a WIC outlet:

### FINDINGS OF FACT

. . . .

(17) Sullivan testified that she believes that there are nineteen (19) other WIC-approved vendors within seven (7) miles of Kroger L–327, the closest being a Winn Dixie approximately two-tenths of a mile from Kroger L–327 which is located at 2809 West Broadway. Sullivan further testified that from October 1, 2000, through September 30, 2001, this same Winn Dixie averaged more WIC related transactions each month than Kroger L–327. She also testified that this Winn Dixie has or can get all WIC-

approved food items. (Citations omitted).

....

(20) Before disqualifying a vendor, the Department must determine if the disqualification of the vendor would result in inadequate access for the WIC participants. Boyles testified that the WIC coordinator in the Louisville area was contacted to see if there existed a special circumstance that would cause inadequate participant access if Kroger L–327 were to be disqualified from the program for one (1) year. The WIC coordinator reported that no such circumstance existed. Boyles also testified that she personally had determined that the Winn Dixie store two-tenths of a mile away was a comparable store and that it provides every WIC-approved food item as does Kroger L–327. Boyles further testified that there existed no other geographic barriers between Kroger L–327 and the next accessible vendor. Accordingly, Boyles concluded that disqualifying Kroger L–327 from the WIC Program for one (1) year would not result in inadequate participant access in that area of Louisville. (... 7 C.F.R., Part 246.12(f)(2)(xxi); 902 KAR 4:040, Section 13).

### CONCLUSIONS OF LAW

....

(9) As required by federal and state regulations, the Cabinet has considered whether disqualification of Kroger L–327 from the WIC Program for a period of one (1) year would create inadequate participant access for WIC Program participants. 7 C.F.R., Part

246.12(f)(2)(xxxi) and 902 KAR 4:040, Section 13. As a result of its investigation, the Department determined that Kroger L–327's disqualification from the WIC Program would not create a problem of inadequate access for WIC participants due to the existence of nineteen (19) other WIC-approved vendors within seven (7) miles of Kroger L–327 (with the closest being only two-tenths of a mile away). This determination is not subject to administrative review.[3]

From the foregoing, and from the record generally, it is apparent that the Cabinet's determination that the closing of Kroger for one year would not have an adverse impact on local WIC participants was based in significant part on the circumstance that there was a Winn Dixie store adjacent to Kroger which would provide a reasonable and convenient alternative to Kroger's local WIC customers. Our attention was drawn to the ongoing viability of the Cabinet's participant impact analysis by the following dicta contained in the circuit court's opinion affirming the Cabinet's decision:

Finally, this Court has very grave concerns about the impact of the Secretary's decision on the participants in the L–327's neighborhood. These concerns are exacerbated by the pending closure of all the Winn–Dixie stores in the Louisville area. The closures were announced after the administrative hearing. Unfortunately, this Court cannot consider new evidence. *Mill Street Church of Christ v. Hogan*, Ky.App., 785 S.W.2d 263 (1990).[4]

---

3. Without citation, the ALJ appears to intimate that the Cabinet's determinations with regard to participant access are "not subject to administrative review." We reject this view. *See, e.g.,* Kentucky Constitution § 2 (Absolute and arbitrary power over the lives, liberty and property of freemen exists no-

where in a republic, not even in the largest majority.).

4. *Mill Street Church of Christ v. Hogan* is a Workers' Compensation case which includes the statement "KRS 342.285 states that the reviewing court should not consider any new

However, this Court strongly urges the Cabinet to look at the community and participants affected by this action. The loss of both L–327 and Winn–Dixie will have a calamitous impact on the residents of this neighborhood. The availability of other, smaller, vendors will never adequately provide for the needs of WIC and Foodstamp Program participants in a neighborhood where many of the residents do not drive and must walk or take public transportation. Those residents will be forced to go to several different locations to complete their shopping. This will undoubtedly cause considerable hardship to these inhabitants. Regretfully, this Court is without the authority to prevent this under the current state of the law.

■■■ At oral argument in this matter, the parties acknowledged that the Winn Dixie store formerly located at 2809 West Broadway is no longer in operation, and that no other grocery business is operating at the site. As the Cabinet's participant access analysis was based in significant part upon the premise that there would be a full-service WIC grocery outlet in operation at the former Winn Dixie location, the ongoing soundness of the Cabinet's participant access analysis is called into serious question.

If the suspension of a store will result in an undue adverse impact upon WIC participants, the Cabinet is authorized to impose sanctions other than suspension. 902 KAR 4:040 § 13(6). Because of the nature of this case and the potential devastating consequences to the affected neighborhoods if the only full-service WIC outlet in the area were to be closed, the realities compel that we recognize the change in circumstances which has occurred subsequent to the administrative hearings in this case. *See City of Tulsa v. Chamblee,* 188 Okla. 94, 106 P.2d 796 (1940) (Generally, in exercising appellate jurisdiction a court confines its investigation of facts to record before it as presented when appeal was perfected, but it may in proper cases take cognizance of facts arising during pendency of appeal where such facts bear directly on question presented on appeal.); *Edward E. Gillen Co. v. John H. Parker Co.,* 170 Wis. 264, 174 N.W. 546 (1919) (A conceded fact occurring subsequently to the original judgment in the court below should be considered in determining appeal.); *Rudnicki v. Town of Valley Brook,* 424 P.2d 973 (Okla.1967) (Court may, in proper cases, take cognizance of acts arising during the pendency of appeal where such facts bear directly on question presented on appeal.); *cf. Van't Rood v. County of Santa Clara,* 113 Cal.App.4th 549, 6 Cal.Rptr.3d 746 (2003) (Except in rare cases where events subsequent to the lower court ruling under review have rendered the case totally moot, the appellate court does not, and may not, consider subsequent events.).

■■■ While we recognize that a reviewing court should recognize changes occurring subsequent to trial proceedings only in the rarest of circumstances, we believe that the case before us presents such a circumstance. In our view, the real parties in interest in this case are the pregnant, nursing, and post-partum women,

or additional evidence, and it should not substitute its judgment as to the weight of evidence on questions of fact." KRS 342.285(2)· provides, among other things, that upon appeal from a Workers' Compensation ALJ to the Workers' Compensation Board "[n]o new or additional evidence may be introduced before the board except as to the fraud or misconduct of some person engaged in the administration of this chapter. . . ." As the present proceedings are not subject to Chapter 342, *Hogan* and KRS 342.285 have no application in this case.

and the infants and children in the affected neighborhoods. We take judicial notice that West Louisville, the area at issue, is an economically depressed area and that many citizens of the area must rely upon walking as a primary means of transportation. Under these circumstances, a local full-service WIC grocery outlet is crucial to the success of the program.

Because the ongoing soundness of the Cabinet's participant access study has been called into serious question by events occurring subsequent to the administrative proceedings, we vacate the decision of the Secretary and remand the matter to the ALJ for additional proceedings consistent with this opinion.

ALL CONCUR.