Sammy F. MOBLEY, Jr., Appellant

v.

Deborah K. PAYNE, Hearing Officer; Ravonne Sims, Warden, RCC; and J. Michael Brown, Secretary, Justice Cabinet, Appellees

NO. 2014–CA–001366–MR

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 26, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Sammy Mobley–Pro Se, LaGrange, Kentucky

BRIEF FOR APPELLEES: Brenn Combs, Frankfort, Kentucky

BEFORE: CLAYTON; D. LAMBERT; AND J. LAMBERT, JUDGES.

*OPINION*

D. LAMBERT, JUDGE:

This matter is before the Court on appeal from an order entered by the Franklin Circuit Court, dismissing the *pro se* Petition for Declaratory Judgment filed by the Appellant, Sammy F. Mobley, pursuant to Kentucky Rules of Civil Procedure (CR) 12.02.

**Factual and Procedural History**

Mobley is currently serving a term of incarceration in the custody of the Kentucky Department of Corrections. Mobley was, at the time period relevant to the adjudication of this appeal, housed in the Roederer Correctional Complex ("RCC"). The campus of this institution includes a farm.

Beginning on December 25, 2013, and ending on January 6, 2014, Mobley placed six phone calls to his wife. As with all inmate telephone conversations, those six fifteen-minute phone calls were monitored and recorded. On January 14, 2014, two corrections officers, Captain Joy Keifer–Warford and Lieutenant Lindsey Smith, completed a discipline report concluding that Mobley was, during those telephone conversations, attempting to arrange the delivery of contraband items onto the grounds of the prison.

The report compiled by the officers contained several suspicious comments between Mobley and his wife, which the officers concluded to be thinly coded language. During these conversations, Mobley described a location to his wife, which, according to the officers, corresponds with roads on the perimeter of the RCC farm premises. He further told her "y'all need to fix that gate," which she confirmed back to him. He then further instructed that she should "just throw it on the ground," which she also confirmed back to him. In the same conversation, Mobley noted that "[i]f you do that it has to be quick" and when his wife opined that this task should be accomplished at night, Mobley noted that it needed to be after 4:00, and confirmed the location with her again. In another conversation, Mobley instructs her to accomplish her task that day, because the horses had moved. The report noted that the movement of the horses mentioned in this conversation corresponded to the movement of the horses kept on RCC's farm near the location previously discussed by the two. In another conversation, Mobley broached the topic of pain medication by asking his wife about her having teeth pulled by the dentist, and noted his own condition, kidney stones, put him in a situation where he was "hurting bad." Later in that conversation, Mobley requested his wife go to "get some today" and "put a couple more," and further requested she "do it" the next day. In the final conversation, Mobley asked his wife if she had gotten "some of those things," to which she replied "Norcos." According to the report, "Norcos" is a term denot-

ing a prescription medication containing hydrocodone.

It is not disputed that the recordings of these conversations were preserved. Mobley notes that he requested the investigating officer review the entire recordings of each of these conversations, and that such review never occurred. The essence of Mobley's grievance is that he claims this was a recurring theme.

Disciplinary proceedings were instituted against him. The evidence presented against him consisted of the report compiled by Keifer–Warford and Smith, plus Mobley's previous discipline record wherein it was established that he had previously been disciplined for attempting to arrange drops of contraband on prison grounds in 2013. Mobley contended the conversations pertained to locations on his own farm, and his own horses, rather than those belonging to RCC. Mobley presented evidence in the form of his own statement regarding the content of these conversations, as well as pictures of his own farm, and requested the adjustment hearing officer review the entirety of the recordings for the proper context. The adjustment hearing officer, without disputing Mobley's account of the content of the conversation, agreed with the investigating officers' conclusion reached in the report: Mobley was speaking in coded language directing his wife to a location on the prison farm for a drop of contraband. The adjustment hearing officer issued an opinion convicting Mobley of the violation "due to the staff's report and staff investigation of the report."

Mobley then appealed to the warden of the institution, arguing that he was entitled to have the adjustment hearing officer review the entirety of the phone conversations rather than simply reviewing the investigation report. The appeal sought to have the warden review the entirety of the phone conversations as well. On February 24, 2014, the warden issued a memorandum stating that sufficient evidence was presented in the record to justify a finding of guilt, and concurring fully with the findings of the adjustment hearing officer.

Having exhausted his administrative remedies per 501 Kentucky Administrative Regulations (KAR) 6:020(15.6)(f)(7) and Kentucky Revised Statutes (KRS) 454.415, Moberly filed a "Petition for Declaratory Judgment" in the Franklin Circuit Court on June 26, 2014. Therein, he alleged that both the adjustment hearing officer and the warden had acted to deprive him of due process by convicting him of the disciplinary infraction "without sufficient evidence to support that conviction." Specifically, he alleged that the procedures governing inmate disciplinary proceedings, found in 501 KAR 6:020(15.6), allow him to present documentary evidence in his defense for the adjustment hearing officer's review, and he was deprived of due process when the hearing officer issued findings without considering the full context of the phone conversations.

The Department of Corrections (hereinafter "the Department") filed a response and motion to dismiss the petition pursuant to CR 12.02, based on failure to state a claim for which relief can be granted. The Department argued that Mobley was afforded an opportunity to present a complete defense, and the adjustment hearing officer had committed no violation of Mobley's right to due process in making the findings based on the record as it existed.

The Franklin Circuit Court issued an order dismissing the petition based entirely on the fact that Mobley was, in fact, able to present a defense at his adjustment hearing. This appeal followed, wherein Mobley argues that the trial court's dismissal was contrary to the established standard of review for motions to dismiss,

and that the trial court's ruling was contrary to established precedent.

## Analysis

### I. Standard of Review

■ The Kentucky Supreme Court conducted a thorough examination of the standard of review for motions to dismiss for failure to state a claim upon which relief can be granted in 2010:

A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint. So a court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved. Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. This exacting standard of review eliminates any need by the trial court to make findings of fact; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief? Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky.2010) (internal citations and quotations omitted).

■ This Court must conduct a *de novo* review of the trial court's decision; therefore the Court must also consider the standard by which administrative decisions are reviewed by reviewing courts. When no errors of fact are alleged, "[t]he standard of review with regard to a judicial appeal of an administrative decision is limited to determining whether the decision was erroneous as a matter of law." *Kroger Ltd. Partnership v. Cab. For Health and Family Serv., Commonwealth of Kentucky,* 174 S.W.3d 516, 518 (Ky.App.2005); *Bd. of Comm'rs of City of Danville v. Davis,* 238 S.W.3d 132 (Ky.App.2007). Because inmate petitions for review of disciplinary proceedings share many aspects with appeals, "[t]he court seeks not to form its own judgment, but, with due deference, to ensure that the agency's judgment comports with the legal restrictions applicable to it." *Smith v. O'Dea,* 939 S.W.2d 353, 355 (Ky.App.1997). This Court has previously noted that "... a motion for summary judgment provides, in most cases, the most appropriate procedure and standards for addressing these petitions [for declaration of rights following adverse inmate disciplinary rulings]." *Id.,* at n. 1. The analysis under either standard produces the same result, as both require inquiry into the presence of an unresolved issue of material fact and a viewing of the record in light most favorable to the nonmoving party. *See Fox,* supra; *Steelvest, Inc. v. Scansteel Serv. Ctr.,* 807 S.W.2d 476 (Ky.1991); *Scifres v. Kraft,* 916 S.W.2d 779 (Ky.App.1996). As this Court has previously ruled, "[w]hat is a material fact is determined by the substantive law of the case." *Nork v. Fetter Printing Co.,* 738 S.W.2d 824, 827 (Ky. App.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

However, the lack of an unresolved issue of material fact is only a portion of the summary judgment analysis. "A well-supported motion for summary judgment can terminate litigation when, as a matter of law, it appears that it would be impossible for the responding party to produce evidence at trial warranting a judgment in its favor." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 199 (Ky.2001). Moreover, "[t]he party opposing summary judgment

cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Id.* "[S]peculation and supposition are insufficient to justify submission of a case to the jury, and ... the question should be taken from the jury when the evidence is so unsatisfactory as to resort to surmise and speculation." *Sparks v. Trustguard Ins. Co.,* 389 S.W.3d 121, 124 (Ky.App.2012) (quoting *O'Bryan v. Cave,* 202 S.W.3d 585, 588 (Ky.2006)).

## II. The Trial Court's Dismissal of Mobley's Petition

■ Courts reviewing inmate disciplinary proceedings are to apply a very deferential standard of review. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Supt. Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). This standard is met if " 'some evidence from which the conclusion of the administrative tribunal could be deduced ...' " *Id.* (quoting *U.S. ex rel. Vajtauer v. Comm'r of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560 (1927). Kentucky courts adopted the "some evidence" standard in *Smith v. O'Dea,* a case which also cautioned the trial courts presiding over such declaratory actions to continue to "be vigilant in detecting and steadfast in remedying genuine prison abuses." 939 S.W.2d 353, 358 (Ky.App.1997).

Mobley's position is that because he alleged in his petition that a review of the entirety of the recordings would exonerate him, the trial court impermissibly resolved an issue of material fact. In making his arguments, he relies entirely on authorities defining the standard of review, and his own *pro se* legal conclusions. Mobley did not dispute the fact that he was allowed to present evidence at the hearing, nor did he dispute the fact that the adjustment hearing officer considered and rejected his position based on the discipline report and the staff's investigation reflected therein.

The argument underlying Mobley's petition is that the failure of the adjustment hearing officer and the warden to review the entirety of the recordings amounted to both a violation of the Department's own regulations, and deprivation of due process. Even assuming the allegation of the regulatory violation has merit, the Sixth Circuit has previously held in another prisoner discipline proceeding that "[t]here is no constitutional violation when state actors fail to meet their own regulations, so long as minimum constitutional requirements have been met." *Black v. Parke,* 4 F.3d 442, 448 (6th Cir.1993).

The Kentucky Supreme Court has previously been asked to determine whether an investigating officer had violated the inmate's right to due process by failing to interview two of the alleged eyewitnesses at the inmate's request for a disciplinary proceeding. *White v. Boards–Bey,* 426 S.W.3d 569 (Ky.2014). The Supreme Court reversed the Court of Appeals, ruling that even though the officer had violated the same administrative regulation at issue here, such violation did not rise to the level of a due process violation. *Id.,* at 575. Also noteworthy in *White v. Boards–Bey,* is the fact that the inmate did not give a statement in his own defense.

The Kentucky Supreme Court reached a different conclusion when asked to determine whether an inmate's right to due process had been violated when the adjustment hearing officer refused to review a surveillance video upon the inmate's request. *Ramirez v. Nietzel,* 424 S.W.3d 911 (Ky.2014). Noting that "[d]ocumentary evidence cuts through the inmate's inherent credibility dilemma," the Supreme Court explicitly held that "an [adjustment

hearing officer] must review security footage if an inmate requests such a review." *Id.* at 919–920. "The inmate ... has a right to have the [adjustment hearing officer] view the footage and, in turn, consider its weight in making her finding of guilt or innocence." *Id.,* at 920. The only difference in the instant case and *Ramirez* is the type of record the inmate requested the officer to review. The negligible difference between a video recording and an audio recording is insufficient for this Court to justify departure from the Supreme Court's clear and unambiguous holding in *Ramirez.*

### III. Conclusion

After reviewing the record *de novo,* and considering the record in the light most favorable to Mobley, this Court must agree with his position that he had been deprived of due process as set forth by the Kentucky Supreme Court in *Ramirez.* The trial court thus acted inappropriately when dismissing Mobley's petition. We therefore REVERSE the trial court's denial of the petition and REMAND the matter to Franklin Circuit Court for further proceedings consistent with this ruling.

ALL CONCUR.