Steve HANEY, et al, Appellants

v.

Ontario THOMAS, Appellee.

No. 2011–SC–000453–DG.

Supreme Court of Kentucky.

Aug. 29, 2013.

Stafford Easterling, Justice and Public Safety Cabinet, for appellants.

Melinda Brooke Buchanan, Assistant Public Advocate, for appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellee, Ontario Thomas, is currently in the custody of the Kentucky Department of Corrections. On April 17, 2009, while serving time at Northpoint Training Center, Thomas allegedly assaulted another inmate by the name of Jeffery Elam. Correctional Lieutenant Walter Gribbins investigated the matter. Based on the information Lieutenant Gribbins received from at least two confidential informants, he concluded that Thomas hit Elam in the eye after Elam refused to pay Thomas "yard tax." As a result of his investigation, Lieutenant Gribbins submitted a disciplinary report against Thomas for violating Kentucky Corrections Policy and Procedure ("CPP") Category VII, Item 2, "physical action resulting in death or injury of an inmate." Thomas maintained his innocence. On June 2, 2009, the Adjustment Committee held a hearing, during which no witnesses were called. The Adjustment Committee determined that Thomas was guilty of the infraction. Thomas was sentenced to 180 days of disciplinary segregation, loss of two years of non-restorable good time credit, and payment of restitution in the amount of $1,500 for medical expenses. Thomas appealed the Adjustment Committee's decision, arguing that its final disposition failed to declare that the confidential informants were reliable.

On December 16, 2009, Thomas also filed a Petition for Declaration of Rights in the Lyon Circuit Court. Thomas' petition argued that the Adjustment Committee's reliance on information obtained from the confidential informants violated his constitutional rights of due process under the Fourteenth Amendment of the U.S. Constitution and Section 2 of the Kentucky Constitution.

Shortly after Thomas filed his petition in the circuit court, Warden Steve Haney granted Thomas' internal appeal, ordering a rehearing and vacating the original disciplinary report. The Adjustment Committee reheard Thomas' case on January 26, 2010. The Adjustment Committee's report stated the following: "We find [inmate] Thomas guilty based on the confidential information received from Lieutenant Gribbins. The Committee review[ed] the confidential information and believe it to be true and reliable according to policy." Appellant once again appealed the Adjustment Committee's determination and requested that the Adjustment Committee investigator interview two alleged witnesses. Both witnesses, neither of which testified before the Adjustment Committee, told the investigator that they were uncertain of who assaulted Elam. On February 23, 2010, a final Adjustment Committee hearing was held. Once again, the Adjustment Committee stated that Thomas was guilty of the infraction "based on the confidential information received from Lieutenant Gribbins, [which] the Committee ... believed [ ] to be true in accordance to policy." The Adjustment Committee re-sentenced Thomas to the same punishment as it did in its original sentence.

By the time the Lyon Circuit Court ruled on Thomas' petition, his disciplinary report had been vacated, re-investigated, and reheard. Therefore, Thomas had already obtained the relief sought in his petition. However, the trial court, in anticipating a subsequent petition on the same grounds, stated that in the "spirit of judicial efficiency and economy," it would address Thomas' due process arguments. The trial court ultimately dismissed Thomas' petition, stating that the Adjustment Committee complied with the requirements of procedural due process as outlined in Wolff v. McDonnell, 418 U.S. 539,

563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Furthermore, the trial court held that since the Adjustment Committee complied with the CPP as it pertains to confidential informants, Thomas' due process rights were not infringed upon.

Thomas appealed the Lyon Circuit Court's order dismissing his petition. The Court of Appeals reversed on the grounds that there was insufficient evidence of the disciplinary charge against Thomas to pass the "some evidence" standard pronounced in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The Court of Appeals specifically took aim at the difficulty in conducting a meaningful review of the Adjustment Committee's findings regarding the reliability of the confidential informants. Relying heavily on *Hensley v. Wilson,* 850 F.2d 269 (6th Cir.1988), the Court of Appeals stated that in order "to determine whether the confidential informant qualifies as 'some evidence' the reviewing court must be able to look into the reliability of the informant and the information the informant provides." Since the record was devoid of information or any explanation to support the Adjustment Committee's determination that the informants and their information were reliable, the Court of Appeals found that Thomas' due process rights had been violated. Accordingly, the Court of Appeals reversed and remanded the case back to the trial court with instructions to order a new Adjustment Committee hearing consistent with its opinion. We granted discretionary review.

 Prison disciplinary proceedings, such as the Adjustment Committee hearing in the case before us, are not criminal prosecutions. *Wolff,* 418 U.S. at 556, 94 S.Ct. 2963. Rather, these proceedings are considered administrative proceedings.

Consequently, prisoners subject to disciplinary proceedings do not enjoy the full panoply of due process protections. *Id.* Prisoners do, however, retain a minimal right to due process subject to the many limitations inherent in the penal system. *Id.* In order to comply with the minimum requirements of procedural due process, an inmate cannot be deprived of a protected liberty interest unless he receives: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Walpole*, 472 U.S. at 454, 105 S.Ct. 2768 (citing *Wolff*, 418 U.S. at 563–67, 94 S.Ct. 2963). Additionally, due process requires that there be "some evidence" in the record to support the disciplinary board's decision. *Walpole*, *Id.* This standard merely requires some basis in the record in which the reviewing court can deduce the reasons for the disciplinary board's finding. *Id.* at 457, 105 S.Ct. 2768. "Ascertaining whether this standard is satisfied does not require [a reviewing court's] examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455–56, 105 S.Ct. 2768.

Notwithstanding this easily satisfied evidence threshold, such a determination becomes difficult in situations, as is before us, where the supporting evidence is based entirely on confidential information which is neither supplied to the reviewing court, nor discussed in the Adjustment Committee's report or findings. This comes disturbingly close to the inmate being adjudged guilty simply because the investigating officer says he or she is guilty. When the Adjustment Committee believes the informant's information is reliable without giving any reasons for its faith in that evidence, we are faced with rubber stamping an arbitrary determination.

■ For this reason, when confidential information is the basis for a prison disciplinary proceeding, the majority of federal circuits require the disciplinary board to provide in the record evidence of the reliability of the information provided by the confidential informant. *See, e.g., Henderson v. Carlson*, 812 F.2d 874, 879 (3d Cir.1987); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir.1985); *Freitas v. Auger*, 837 F.2d 806, 810 (8th Cir.1988); *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir.1987); *Taylor v. Wallace*, 931 F.2d 698, 702 (10th Cir.1991). However, it is vital that the disciplinary board not divulge too much information, for we acknowledge the sensitive nature of confidential informants within the prison setting and the need to protect them from retaliation. Undeniably, "[r]etaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake...." *Wolff*, 418 U.S. at 562, 94 S.Ct. 2963. That is why "[p]rison administrators [are] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ Our ultimate inquiry, therefore, is what amount of particularized findings must the Adjustment Committee make in order for the "some evidence" standard to be met while also protecting the safety and security of inmates who become witnesses?

The Sixth Circuit, for example, has held that to pass constitutional muster, the Adjustment Committee must have "some evidentiary basis ... upon which to deter-

mine for *itself* that the informant's story is probably credible." *Hensley,* 850 F.2d at 277 (emphasis in original). The Sixth Circuit explained that if the Adjustment Committee simply accepted the investigating officer's conclusion as true, it would be "merely recording the findings made by the investigating officer.... To proceed in that fashion is not fact finding. It is recordkeeping." *Id.* at 276.

A brief survey of other federal circuits reveals various methods of verifying an informant's reliability. The Seventh Circuit has relied on the following methods of establishing an informant's reliability:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that, he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Mendoza,* 779 F.2d at 1293 (internal citations and quotations omitted). We must note, in relation to the third verification method, that in a prison setting where all inmate witnesses are convicted felons, and most of which remain under the radar screen of prison officials, the term "credibility" is not as essential as "reliability." Credibility may prove elusive. Adjustment Committee chairpersons and its members may not always have the luxury of having witnesses who have established track records for credibility in prison. Nonetheless, such information, if available, would aid the Adjustment Committee in its determination.

The Third Circuit requires underlying factual information to support the infor-

mant's reliability, in addition to a finding that "the informant spoke with personal knowledge of the matters contained" in the disciplinary report. *Henderson,* 812 F.2d at 879 (quoting *Gomes v. Travisono,* 510 F.2d 537, 540 (1st Cir.1974)). Additionally, the Ninth Circuit requires that the "(1) the record contain[ ] some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contain[ ] a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." *Zimmerlee,* 831 F.2d at 186.

Here, in essence, the record simply begs for some corroborating factors, however small. As evidenced from the aforementioned examples, there are numerous ways the Adjustment Committee may establish the reliability of information provided by a confidential informant. This can be done without disclosing the name of the informant or even establishing the credibility of the witness. As previously noted, while that is always a heavy consideration, most times in a correctional setting the individual history of the informing witness may not be known.

Nonetheless, the previous examples illustrate several possibilities and even those are non-exhaustive. For example, reliability may be confirmed by the fact that there are multiple unnamed informants whose stories are consistent and corroborate one another. However, we underscore that there must be some evidence in the record to support the Adjustment Committee's finding that the information obtained from the informant is reliable. A simple statement in the Adjustment Committee's findings that "the Committee believes the informant is credible and the information reliable" is not enough to satisfy the some evidence standard.

In the record before us, there is plainly no evidence to support the Adjustment Committee's determination that the informants' information was reliable. We know nothing of these informants and their information—whether they were eyewitnesses or whether there was any corroborating evidence. It would be helpful if the investigating officer, after being duly sworn, gave written details of what was related. This would not only bolster the observation of the witnesses, but would also provide the inmate charged with a better opportunity to rebut the evidence against him. We do not consider it an unreasonable burden on prison administrators to simply state for the record, without divulging identities, why witnesses are reliable. It is needful that we be reminded that taking non-restorable good time from a prisoner essentially adds time to his or her sentence.

Consequently, we affirm the Court of Appeals' determination that the Adjustment Committee, relying solely on the confidential informants' information, failed to supply some evidence to support its finding that the confidential informants were credible and their information reliable. As a result, Thomas' due process rights were violated.

For the forgoing reasons, we hereby affirm the decision of the Court of Appeals.

MINTON, C.J., ABRAMSON, KELLER and VENTERS, JJ., concur. NOBLE and SCOTT, JJ., dissent for the reason that the hearing was redone and would uphold the Adjustment Committee's assessment of the informant's credibility and, thus, would reverse the Court of Appeals.