**Jose RAMIREZ, Appellant,**

**v.**

**Tracy NIETZEL, in her capacity as Adjustment Hearing Officer at the Northpoint Training Center, Appellee.**

**NO. 2014–CA–001343–MR**

Court of Appeals of Kentucky.

RENDERED: OCTOBER 16, 2015; 10:00 A.M.

Brief for Appellant: Melissa N. Henke, Lexington, Kentucky.

Brief for Appellee: Edward A. Baylous, II, Frankfort, Kentucky.

BEFORE: D. LAMBERT, MAZE, AND THOMPSON, JUDGES.

*OPINION*

D. LAMBERT, JUDGE:

This appeal surrounds an inmate disciplinary hearing at Northpoint Training Center (hereinafter, "Northpoint"). Appellant (hereinafter, "Ramirez") was disciplined by the Appellee (hereinafter, "Adjustment Officer Nietzel") for his alleged involvement in an assault on two other

inmates, Henry Rodgers, (hereinafter, "Rodgers") and Ricky Lee, (hereinafter, "Lee").

## I. Facts

On August 19, 2009, inmates Rodgers and Lee were victims of an assault which took place behind the prison chapel. Ramirez and several other inmates were placed in administrative segregation and questioned by an investigating officer, Captain Gary L. Frederick. Ramirez claimed he was asleep in his dorm at the time of the assault. The investigating officer did not believe this alibi and reported that Ramirez, along with at least eight other inmates, participated in the attack.

On September 22, 2009, the investigative officer prepared two documents: a memorandum to the Warden, Steve Haney,[1] and a disciplinary report form. Both were given to Ramirez. A disciplinary hearing was scheduled for October 26, 2009. After receiving a copy of the disciplinary write-up, Bobby Nation, an inmate legal aide, was assigned to assist Ramirez in preparing a defense for the hearing. Adjustment Officer Nietzel presided over the hearing.

At the hearing, Ramirez pled not guilty and requested to call fellow inmates Louis Pena–Martinez and Rodgers, the victim, as witnesses. Adjustment Officer Nietzel allowed Pena–Martinez's statement made to the investigating officer to come in that Ramirez was asleep in his dorm when the incident occurred. However, in her opening remarks Adjustment Officer Nietzel refused to let the victim inmate Rodgers testify, stating that to do so would be unduly hazardous to institutional and correctional goals. Adjustment Officer Nietzel also denied Ramirez's request that she view the security footage of the area where the assault took place for the same stated reason. When addressing Ramirez's request to admit the written statement of inmate Rodgers which stated that Ramirez was not involved in the assault, Adjustment Officer Nietzel denied the request and stated that to admit the written statement would also be unduly hazardous to institutional and correctional goals.[2] No other witnesses were called and no witnesses who were called identified Ramirez as a participant in the assault.

Approximately twelve minutes after the beginning of the hearing, Adjustment Officer Nietzel found Ramirez guilty of physical action against another inmate resulting in death or serious physical injury and for conspiring, aiding and attempting to cause serious physical harm to another inmate based on the fact that the inmates were armed with strings and locks. Ramirez was ordered to pay a percentage of any and all medical bills pertaining to the inci-

---

1. The memorandum to the Warden was never given to Ramirez, his assigned legal aide nor his attorney on appeal. This document was ultimately produced with a supporting affidavit of Adjustment Officer Nietzel after this matter had been first reviewed by the Kentucky Supreme Court. See Ramirez v. Nietzel, 424 S.W.3d 911 (Ky. 2014). However, this document was provided to the trial court and placed under seal. Our court has now thoroughly reviewed both the memorandum and the affidavit of Adjustment Officer Nietzel.

2. A witness statement for the Adjustment Hearing from Henry Rodgers, dated 10/9/2009 and signed by Rodgers, says that "I was behind the church & when the guys ran up on me, there was no mexican, [sic] they were all black & I don't know their names." The statement was signed by Henry Rodgers and witnessed by Bobby Nation, the assigned legal aide. A notation, perhaps made by Adjustment Officer Nietzel, was made on the statement as follows:

   *This witness statement is being denied 1— was not obtained correctly, this was placed in the adjustment mailbox and the investigating officer did not do this! 2—unduly hazardous to institutional safety & correctional goals due to this I/M being the victim.

dent,[3] and was given 180 days of disciplinary segregation and the loss of 730 days of non-restorable good time.

Ramirez initially appealed to Warden Steve Haney, who upheld Adjustment Officer Nietzel's decision, finding that due process was afforded and that the charge and penalty were appropriate. Ramirez then appealed the action to the Boyle Circuit Court in action number 10–CI–00269, where it was ultimately found that due process at the adjustment hearing was sufficient. Another panel of this Court affirmed the circuit court in case number 2011–CA–000382–MR.

Ramirez sought discretionary review from the Kentucky Supreme Court which reversed and remanded the case to the Boyle Circuit Court. The Kentucky Supreme Court also held[4] that while an adjustment officer is not required to provide a detailed reason for the denial of the witness, a reason for the denial must be provided for the record on appeal. Moreover, the reason must be stated in "sufficient detail to support a finding that the denial was 'logically related to preventing

undue hazards to institutional safety or correctional goals.'" *Ramirez* at 920. The Supreme Court further added that the officer's reasoning could be provided *in camera* or under seal and the details of the denial need not be disclosed to the prisoner.

The Supreme Court finally held that, if requested by a prisoner, the adjustment officer must review any surveillance footage or similar documentary evidence. While the Supreme Court acknowledged that the "some evidence" standard established by *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), materially limited review of prison disciplinary cases, the Supreme Court found that basic due process could be satisfied.

After the case was remanded to the circuit court, and in response to the Supreme Court's order for her to review the tape, Adjustment Officer Nietzel filed a notice indicating that no video recording of the assault ever existed.[5] Ramirez re-

**3.** This amount was later determined to be $556.17. Ramirez has paid this sum in full.

**4.** *Ramirez v. Nietzel*, 424 S.W.3d 911 (Ky. 2014).

**5.** The assault was "the first in a chain of events culminating in a riot that severely damaged facilities at Northpoint Training Center." R. at 56. As a result of the post attack riot, the surveillance system in use at the time of the assault was damaged and has been replaced. Now, according to Nietzel, revealing the scope of the system at the time of the attack no longer presented a threat to institutional security. The cameras used for prison yard surveillance were fed to black and white monitors in a central operations room. While the video feed was monitored, it was not continuously recorded. The recording capability was provided by a VHS recorder and in order to record the feed from a particular camera, an officer on duty had to manually

select the camera feed to be recorded and activate the video recorder. Apparently, when the assault began the officers assigned to monitor the camera system rushed to the scene of the assault and in doing so either "failed to activate the recording system or failed to do so properly." R. at 57. This resulted in no recorded video footage of the assault.

Nietzel asserted that, at the time of the disciplinary hearing, she believed that revealing the scope and capability of the video surveillance system posed a potential risk to institutional security and that she "did not want to reveal the scope and capability of the video system either directly or in a manner that would permit inmates from inferring the scope and capability while making an explicitly false statement in her findings," and that she "felt the best course was to deny access to the video recording as evidence." *Id.* While she acknowledges that her statement could have been interpreted as inferring the exis-

sponded and requested that the court strike the notice requiring the video to be reviewed on remand and to order Adjustment Officer Nietzel to submit affidavits in support of her findings at the adjustment hearing.

On May 6, 2014, the trial court ordered that the order regarding the *in camera* review be stricken, as it did not exist, and that Nietzel submit an affidavit and any supporting documents regarding her findings to the court. The trial court ordered those documents be filed under seal.

Adjustment Officer Nietzel complied and provided an affidavit with supporting documentation under seal on May 13, 2014. After review, the trial court found Adjustment Officer Nietzel's denial of Rodgers's testimony met the "some evidence" standard established by *Walpole*, supra, and that Nietzel properly denied admission of Rodgers's testimony and his written statement for reasons of institutional safety and security. This appeal follows.

## II. Issues and Analysis

The Supreme Court of the United States has addressed the issue of the level of constitutional protection available to prisoners in such internal disciplinary proceedings many times. Of particular direction is *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits. *Wolff*, and then later *Walpole*, held that an inmate must receive:

(1) advance written notice of the disciplinary charges;

(2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and

(3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Walpole*, 472 U.S. at 454, 105 S.Ct. at 2773 (citing *Wolff*, 418 U.S. at 563–567, 94 S.Ct. at 2978–2980).

### (A) Failure to Consider Testimony of Inmate Rodgers

■ Certainly a victim of a prison assault, who is available to speak or give a written statement, would be a relevant witness to determine who perpetrated the assault. The names of both Inmate Rodgers and Inmate Lee were identified as the victims in the disciplinary write-up form given to Ramirez pursuant to *Wolff's* requirement of advance written notice of the disciplinary charges. Having reviewed the sealed affidavit and supporting document filed by Adjustment Officer Nietzel, we are not persuaded by her assertions as to why inmate Rodgers's statement that Ramirez was not involved in the assault threatened institutional security. While multiple names of other alleged participants are listed in the sealed documents and the release of the other names may cause institutional instability; the one consistent witness statement was from Rodgers, who gave a list of the names of those who assaulted him to the investigator, but never stated that Ramirez assaulted him. This fact was known to Adjustment Officer Nietzel at the time of the hearing. She could have limited any inquiry into to the names of the others who had been identi-

---

tence of a video recording, she asserts that she never explicitly stated that a video in fact existed. At oral argument, counsel for Adjustment Officer Nietzel indicated that the rioting took place after the assault and **before** the

hearing. Thus it is difficult to find the reason for the ruse of the existence of the security footage credible. Counsel for Ramirez was not told of the nonexistence of the security footage until sometime in 2014.

fied by Rodgers as his attackers. However, to prevent Rodgers from exonerating Ramirez, by either his written statement or live testimony, violates the second due process requirement of *Wolff.*

While *Ramirez v. Nietzel* acknowledged that an inmate does not have an "unfettered right to call a particular witness or admit certain documentary evidence[,]" the Court found that an adjustment officer must provide an explanation regarding the decision to not permit the inmate's witness to testify. *Id.* at 917. The Court did not provide a hard-line standard of what constituted a sufficiently detailed description, but it did state that the reason must be "logically related to preventing undue hazards to institutional safety or correctional goals." *Id.* at 918.[6]

Additionally, the Supreme Court made it clear that while due process in the present context did not require the same "level of description or basis expected of a trial judge," an adjustment officer is required to make a specific finding why *"this particular* witness is more hazardous than another[,]" as it would be plausible to view each and every inmate as a security risk. *Id.* at 918.[7] Upon reviewing the facts, the Kentucky Supreme Court found that the initial reasons for denial given by Nietzel were lacking, and this court finds her current reasons are still lacking.[8]

■ As was held in *Walpole,*

Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. 418 U.S. at 563–567, 94 S.Ct. at 2978–2980.

*Walpole,* 472 U.S. at 451, 105 S.Ct. at 2768.

Upon review of Nietzel's affidavit and supporting documentation, we find Nietzel's findings do not meet the requirements of *Ramirez v. Nietzel.* In order for Nietzel's failure to permit Rodgers's testimony, it must be shown that the denial was "logically related to preventing undue hazards to institutional safety or correctional goals." *Id.* at 918. After reviewing the sealed record, it does not follow that permitting one of the known victims to testify on behalf of the accused would present any hazard to institutional safety or correctional goals. Nietzel was charged with being the fact-finder and it was her duty to weigh the evidence. Due process required her to consider Rodgers's statements and/or testimony.

**(B) Failure to Make Finding of Reliability of Confidential Information and Follow Policies and Procedures**

6. However, the Court stated that merely parroting institutional safety in itself is not a sufficient explanation because institutional safety in itself is logically related to institutional safety. *Id.* According to the court, this circularity would essentially make the inmate's right to call witnesses a "privilege conferred in the unreviewable discretion of the [adjustment officer,]" resulting in the inability of an inmate to achieve even a "minimally meaningful" review of any action by the adjustment officer. *Id.*

7. The court found that the reason outlined by the adjustment officer does not need to be disclosed to the inmate, as in certain cases there may be a sound basis for refusing to tell the inmate why his witness was not permitted. Therefore, while the explanation is necessary, it may be performed *in camera* or under seal.

8. As Adjustment Officer Nieztel's affidavit and supporting documents are under seal, this court is somewhat limited in what it may discuss regarding this issue.

Ramirez also argues that his due process rights were violated because Adjustment Officer Nietzel failed to follow Kentucky Corrections Policies and Procedures and make a specific independent finding that the confidential information was reliable. We agree. Ramirez cites *Foley v. Haney*, 345 S.W.3d 861 (Ky.App. 2011), and *Haney v. Thomas*, 406 S.W.3d 823 (Ky. 2013), and Kentucky Corrections Policies and Procedures, Policy Number 9.18, in support of the requirement of a finding of reliability of confidential information.

*Thomas*, the more recent opinion, addresses the requirement for a reliability finding as follows.

> Notwithstanding this easily satisfied evidence threshold, such a determination becomes difficult in situations, as is before us, where the supporting evidence is based entirely on confidential information which is neither supplied to the reviewing court, nor discussed in the Adjustment Committee's report or findings. This comes disturbingly close to the inmate being adjudged guilty simply because the investigating officer says he or she is guilty. When the Adjustment Committee believes the informant's information is reliable without giving any reasons for its faith in that evidence, we are faced with rubber stamping an arbitrary determination.

*Thomas* at 826.

At no point does Adjustment Officer Nietzel make a finding regarding reliability of the confidential information she must have based her findings of guilt upon. In reviewing the sealed documents, only one inmate is cited by the investigative officer as having implicated Ramirez.[9] Kentucky Corrections Policies and Procedures Policy Number 9.18(D)(7)(d) states:

If the adjustment officer or committee decides that information given by a single confidential informant is sufficient for finding that the inmate committed the prohibited act, the adjustment officer or committee report shall include a statement giving the rationale for that decision.

Therefore, we reverse the findings of the circuit court and void the disciplinary proceeding, report and conviction in question, and order restoration of any good time credit lost and repayment to Ramirez of all sums paid for restitution in connection with the disciplinary proceeding.

ALL CONCUR.

---

9. Though this inmate's name is listed in the investigative report, we shall not release his name as it is unnecessary to the discussion of the legal issues herein.