**Jose RAMIREZ, Appellant**

v.

**Tracy NIETZEL, In her Official Capacity as Adjustment Officer at the Northpoint Training Center; and The Kentucky Department of Corrections, Appellees.**

**No. 2012–SC–000131–DG.**

Supreme Court of Kentucky.

March 20, 2014.

Melissa N. Henke, Counsel for Appellant.

Wesley Warden Duke, Counsel for Appellees.

Opinion of the Court by Chief Justice MINTON.

Jose Ramirez was found guilty in a prison disciplinary hearing of committing physical action against another inmate resulting in death or serious physical injury. Ramirez was assessed a penalty of 180 days' solitary confinement, forfeiture of two years' non-restorable good-time credit, and restitution in the amount of $556.17. He then filed a declaration of rights action in circuit court, effectively appealing the finding of guilt, arguing the violation of his due-process rights because the prison's disciplinary hearing officer refused to allow him to call the assault victim and declined to view surveillance-camera footage of the incident. The circuit court denied Ramirez's petition, and the Court of Appeals affirmed the circuit court's judgment.

We accepted discretionary review and now reverse the decision of the Court of Appeals. To effectuate the due process rights established for prisoners by the U.S. Supreme Court's mandate in *Wolff v. McDonnell*,[1] the circumstances of this case lead us to address in two ways the minimum due process requirements in prison-discipline cases.

We hold first that when denying a prisoner's request for a particular witness in a disciplinary proceeding, the Adjustment Officer (AO)[2] is not required to provide

---

1. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

2. The Kentucky Department of Corrections' (DOC) Policies and Procedures create two different levels of "staff member[s] appointed by the Warden ..., empowered to hear, adjudicate and assess appropriate penalties for violations of rules or regulations[,]" known as "Unit Hearing Officer[s]" and "Adjustment Officer[s]." Ky. Dep't of Corr. Policies & Procedures 15.6(I). This case deals with only an Adjustment Officer because Ramirez did not "waive[ ] his right to be heard by the Adjustment Committee or Adjustment Officer" and was not before a Unit Hearing Officer. *Id.* at 15.6(II)(3). The reasoning and holding contained in this Opinion, however,

contemporaneously a detailed reason for the denial of the witness. But if the prisoner challenges the denial by appealing the discipline imposed, the AO must provide for the record on review the AO's reason for denying the witness. And the reason must be stated in sufficient detail to support a finding that the denial was "logically related to preventing undue hazards to institutional safety or correctional goals."[3] The AO's reason can be provided in camera or under seal and need not be disclosed to the prisoner.

Second, we hold that an AO must review surveillance footage, or similar documentary evidence, if requested by the prisoner in a disciplinary proceeding. The AO may review the documentary evidence in camera if there are concerns about institutional safety or other obstacles to the proper operation of penal institutions. In refusing to allow the inmate to view the documentary evidence, the AO—as with denying witness testimony—must simply provide a reason "logically related to preventing undue hazards to institutional safety or correctional goals."[4]

## I. FACTUAL AND PROCEDURAL BACKGROUND.

A fight involving several inmates occurred at Northpoint Training Center, a medium-security prison. Two inmates suffered serious injuries; and one of them, Henry Rodgers, was taken to a local hospital for treatment. While Northpoint investigated the incident, inmate Ramirez was placed in administrative segregation. Throughout the investigation, Ramirez maintained that he did not participate in the fight because he was asleep in his dorm when it occurred. The investigating officer did not believe Ramirez's alibi, instead finding that Ramirez participated in the fight along with at least eight other inmates.

The investigating officer prepared a report, and a disciplinary hearing was scheduled. Ramirez received a copy of the investigating officer's report, and an inmate legal aide was assigned to Ramirez to help in preparing a defense. At the hearing, AO Tracy Nietzel presided. She reviewed and relied upon the investigatory report in reaching her decision. Ramirez pleaded not guilty to the charges against him and requested fellow inmate Louis Pena–Martinez and victim Rodgers be called as witnesses in his defense. The AO permitted Pena–Martinez to testify via telephone but refused to allow Rodgers to testify, citing security concerns. Pena–Martinez, corroborating Ramirez's proffered alibi, testified that Ramirez was asleep in his dorm when the incident occurred. Ramirez also attempted to introduce surveillance-camera footage of the incident; but the AO denied his request, again citing institutional safety grounds.

At the close of the hearing, the AO found sufficient evidence to establish Ramirez's guilt. As punishment, Ramirez was ordered to serve 180 days' solitary confinement, forfeit two years' non-restorable good-time credit, and pay $556.17 in restitution. Ramirez appealed this decision to Northpoint's Warden, who affirmed the AO's finding. After exhausting all administrative appeals, Ramirez filed a declaratory judgment action in circuit court. The circuit court denied relief, and the

should not be limited solely to Adjustment Officers.

**3.** *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (internal quotation marks omitted).

**4.** *Id.*

Court of Appeals affirmed the circuit court's judgment.

## II. ANALYSIS.

Ramirez argues he was denied a fundamentally fair proceeding because the AO refused his request to call Rodgers as a witness and declined to view the surveillance-camera footage. Ramirez argues that (1) at a minimum, the AO should have allowed Rodgers's sworn statement even if Rodgers was not allowed to testify live at the hearing and (2) even if Ramirez was not allowed to view the surveillance-film footage himself, the hearing officer should have viewed it. After reviewing the record and the applicable law, we must reverse the decision of the Court of Appeals.

Prisons are unique environments. "Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace."[5] And although "[t]here is no iron curtain drawn between the Constitution and the prisons of this country[,]" the full panoply of rights due a defendant in inmate disciplinary proceedings does not apply.[6] Put simply, prison disciplinary proceedings are not criminal prosecutions; and punishment is imposed as warranted by the severity of the offense in order to correct and control inmate behavior within the prison.

Ramirez, having been stripped of statutorily granted good-time credit, has a liberty interest[7] at stake and, as a result, is entitled to a modicum of due process. But only the "minimum requirements of procedural due process appropriate for the circumstances must be observed."[8] Accordingly, an inmate facing disciplinary proceedings must be given: a hearing before any deprivation of property occurs; advance notice of the claimed violation; an opportunity to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and a written statement by the factfinder detailing the evidence relied on and the reasons for disciplinary action.[9] The proceedings in the instant case failed to satisfy these requirements.

Admittedly, our review of prison disciplinary cases is materially limited. But a review so limited as to be meaningless cannot satisfy the requirements of due process. Generally speaking, in the context of prison discipline, if "the findings of the prison disciplinary board are supported by some evidence in the record[,]"[10] due process is satisfied. And determining whether "some evidence" is present in the record does not "require examination of the entire record, independent assessment of the credibility of wit-

---

**5.** *Wolff*, 418 U.S. at 562, 94 S.Ct. 2963.

**6.** *Id.* at 555–57, 94 S.Ct. 2963.

**7.** Intuitively, it may seem that the stripping of good-time credit would involve a property interest considering that an inmate is losing an interest granted by the law. Good-time credit operates to reduce an inmate's incarceration time because of good behavior. So the loss of good-time credit directly results in an inmate's incarceration being effectively lengthened. As a result, an inmate's liberty interest is the real interest at issue.

**8.** *Wolff*, 418 U.S. at 558, 94 S.Ct. 2963.

**9.** *Id.* at 557–66, 94 S.Ct. 2963.

**10.** *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The *Walpole* decision was adopted in Kentucky via a per curiam opinion of the Court of Appeals in *Smith v. O'Dea*, 939 S.W.2d 353 (Ky.App. 1997).

nesses, or weighing of the evidence."[11] Even "meager" evidence will suffice.[12] The primary inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."[13] If "some evidence" is satisfied, the fear of arbitrary government action is removed and no due-process violation is found.

Directing our attention to the facts of this case, for the sake of argument, it is difficult to say the evidence against Ramirez fails to satisfy the "some evidence" standard. The investigating officer concluded that Ramirez participated in the fight, and the AO who heard the evidence adopted the investigating officer's report by reference. Although the evidence presented against Ramirez is not very detailed, prison disciplinary cases do not require "evidence that logically precludes any conclusion but the one reached by the disciplinary board."[14] At least arguably, there was evidence presented to support the finding of discipline against Ramirez. But any examination for due process must amount to more than a glance. Looking deeper here, the mechanism through which "some evidence" may ultimately have been presented against Ramirez was fundamentally flawed. Relying on the existence of "some evidence" to indicate due process is satisfied becomes a fallacy if the evidence was produced in a constitutionally deficient proceeding. Today, we attempt to rectify these deficiencies going forward.

## A. The Reason Provided by Nietzel for Denying Rodgers's Testimony was Overly Broad.

Of course, an inmate does not have an unfettered right to call a particular witness or admit certain documentary evidence. Due process is a malleable concept, conforming to meet the particular circumstances. In the prison setting, the right to call witnesses is limited based on the legitimate needs and concerns of the prison. "Prison officials must have the necessary discretion to keep the hearing with reasonable limits[,]"[15] and circumscribing an inmate's right to call witnesses is one such way of exercising this discretion. Ramirez does not dispute that his right to call witnesses is limited. Ramirez argues, instead, that the AO did not provide valid justification for why even Rodgers's written testimony could not be admitted. Indeed, the AO, after refusing Rodgers as a witness because he was the victim, simply offered the oft-repeated ground of institutional safety as the underlying reason for that decision.[16]

Historically, prison disciplinary procedures have not required a particularly detailed reason behind hearing officers' decisions. To this point, at least in Kentucky, an AO is under no constitutional mandate even to "state in writing at the time of the hearing its reasons for refusing to call a witness."[17] Indeed, "given the sort of prison conditions that may exist, there may be a sound basis for refusing to

---

11. *Walpole*, 472 U.S. at 455, 105 S.Ct. 2768.

12. *Id.* at 457, 105 S.Ct. 2768.

13. *Id.* at 455–56, 105 S.Ct. 2768.

14. *Id.* at 457, 105 S.Ct. 2768.

15. *Wolff*, 418 U.S. at 566, 94 S.Ct. 2963.

16. Of course, other reasons may be given for denying a witness. These reasons include

irrelevance, lack of necessity, or other hazards presented in a particular set of circumstances. We focus on "institutional safety" in this Opinion because it is particularly relevant, but our reasoning applies equally to any other reasons allowed.

17. *Ponte*, 471 U.S. at 496, 105 S.Ct. 2192 (internal quotation marks omitted).

tell the inmate what the reasons for denying his witness request are."[18] Prison officials may choose between explaining the decision at the time of the disciplinary hearing or at a later proceeding challenging the decision.[19] The sole requirement is that the decision to refuse witnesses or evidence must be "logically related to preventing undue hazards to institutional safety or correctional goals."[20] Here, the AO cited institutional safety concerns as the reason for denying Rodgers's testimony. Although we do note that the AO provided a commonly accepted reason for denying Rodgers's testimony, we cannot ignore its overly broad nature.

 We believe due process, even inside prisons, requires more than simply parroting "institutional safety." If not, the determination of whether the reason is "logically related" to institutional safety becomes a circular exercise. Of course "institutional safety" is logically related to "institutional safety." As a result of this circularity, offering "institutional safety" alone is essentially offering no explanation. Allowing this would circumscribe the inmate's right to call witnesses to the point of making it "a privilege conferred in the unreviewable discretion of the [AO]."[21] This we cannot do. When an inmate is unable to achieve an even minimally meaningful review of the AO's action, "perfectly arbitrary disciplinary action becomes a real possibility."[22] And when the records of the administrative proceedings—as well as any subsequent proceedings—are devoid of any substance, meaningful judicial review is put out of inmates' reach.

 In requiring a more detailed description of the AO's reason for denial, we are quick to make clear that we do not intend to overburden an already overloaded prison system. First of all, due process in this context does not require the same level of description or basis expected of a trial judge. An AO is not constitutionally required to provide the details of her decision, but an explanation of some sort *is* required. It is entirely plausible to view each inmate witness as a security risk, so citing "institutional safety" says nothing about why *this particular* witness is more hazardous than another. This reasoning, evincing application to the particular circumstances is essential and equally applicable when labeling the witness irrelevant, duplicative, or unnecessary. Simply put, some limited explanation is required.[23]

 Second, we do not require an AO contemporaneously to offer a reason for the denial of witnesses and we do not require the reason be disclosed to the inmate.[24] As we noted earlier, "given the

18. *Id.* at 499, 105 S.Ct. 2192.

19. *Id.* at 497, 105 S.Ct. 2192.

20. *Id.*

21. *Id.* at 498, 105 S.Ct. 2192.

22. *Hensley v. Wilson*, 850 F.2d 269, 282 (6th Cir.1988).

23. We do not offer an example of the type of limited explanation necessary as we are not familiar with the day-to-day security or operational concerns prison officials face. We simply emphasize the explanation need not be detailed; instead, it is more important that

application to the particular circumstances at hand be indicated, such as why a witness would still pose a security risk testifying via telephone or affidavit. *See Neal v. Kentucky Justice & Pub. Safety Cabinet*, No. 2012–CA–000182–MR, 2013 WL 6050758 (Ky.App. November 15, 2013); *Stewart v. Fletcher*, No. 2003–CA001739–MR, 2004 WL 260301 (Ky. App. February 13, 2004).

24. But we note the DOC's Policies and Procedures *do* require that an AO provide a reason contemporaneously with the hearing for denying a witness. Ky. Dep't of Corr. Policies & Procedures 15.6(II)(D)(2)f ("If an inmate is not to be permitted to call a witness, justifica-

sort of prison conditions that may exist, there may be a sound basis for refusing to tell the inmate what the reasons for denying his witness request are." [25] But, we *do* require the AO to offer up an explanation at some point in the proceedings, either at the prison disciplinary hearing or at a later proceeding like this one if the disciplinary ruling is challenged. This explanation may be performed in camera or under seal in order to protect witnesses, prison employees, or the correctional goals of the institution. "Inmates still have a substantial interest in obtaining judicial review of disciplinary actions, and there is no reason why information that must be kept from the inmates may not be preserved for the courts." [26] "Indeed, if prison security or similar paramount interests appear to require it, a court should allow at least in the first instance a prison official's justification for refusal to call witnesses to be presented to the court *in camera.*" [27]

Accordingly, we find the reasoning provided in this case for denying Rodgers's testimony, whether via affidavit, telephone, or live, to be lacking. We remand to the circuit court for further determination.

## B. The Refusal to Admit the Security Footage Violated Ramirez's Due Process Rights.

Next, we turn to whether Ramirez was denied due process when the AO refused to view the security camera footage of the incident in question. While Kentucky courts have found violations pertaining to other forms of documentary evidence, [28] we have never found denial of video footage, particularly, to be a violation of due process. We are aware, however, of other jurisdictions finding the denial of documentary evidence, especially video footage, to be a violation. The Seventh Circuit Court of Appeals, especially, has been clear in its view that this conduct violates an inmate's right to due process. Today, we adopt the Seventh Circuit's position on this issue and find a violation of due process.

 In addition to the limited right to call witnesses in his defense, an inmate also has the right to present exculpatory evidence. These rights are intended to allow the inmate to present a complete defense within the inherent limits of prison life and regulation. Of course, the AO may exclude evidence; but she "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." [29] In "resolv[ing] conflicts in the stories presented to them," AOs are *not* "entitled to prevent the prisoner from offering material evidence." [30] An inmate's attempt to prove his innocence inherently begins on an uphill climb because his credibility is already severely downgraded by his criminal conviction and proven willingness to violate the law. This makes the admission and review of material evidence that much more important. Documentary evidence cuts through the inmate's inherent credi-

tion shall be made in writing on Part II of the report."). Relevant to the instant circumstances, justification must be provided when denying the inmate's request to call the reporting witness or employee. *Id.* at 15.6(II)(D)(2)g.

25. *Ponte,* 471 U.S. at 499, 105 S.Ct. 2192.

26. *Hensley,* 850 F.2d at 279.

27. *Ponte,* 471 U.S. at 499, 105 S.Ct. 2192.

28. *Foley v. Haney,* 345 S.W.3d 861, 864 (Ky. App.2011) (finding due process violation as a result of prison official's refusal to view medical records as requested by the inmate).

29. *Whitford v. Boglino,* 63 F.3d 527, 536 (7th Cir.1995).

30. *Johnson v. Finnan,* 467 F.3d 693, 695 (7th Cir.2006).

bility dilemma and presents an unvarnished version of the facts of the situation. Accordingly, we hold that an AO must review security footage if an inmate requests such review.[31] We emphasize that it is entirely appropriate for prison officials to view inmate-requested footage in camera. It is difficult for us to comprehend a security risk arising from an AO viewing security footage outside the presence of an inmate.

 But, importantly, the inmate himself does not necessarily possess the right to review the videotape. If disclosure of such requested exculpatory evidence would not be unduly hazardous to the security of the institution, the evidence should be disclosed to the inmate.[32] An AO may, however, articulate a legitimate reason for denying the inmate access to the evidence. For example, in the case of security footage, as we have here, there may be a legitimate security concern in disclosing the video footage because prison officials do not "want the offenders to know the capabilities of the cameras for security reasons."[33] As we held above in regard to witness testimony, the justifica-

tion offered by the AO for denying the inmate access to the documentary evidence must be "logically related to preventing undue hazards to institutional safety or correctional goals."[34] Accordingly, the inmate has no unlimited constitutional right to *view* the footage.[35] The inmate only has a right to have the AO view the footage and, in turn, consider its weight in making her finding of guilt or innocence.

 In finding Ramirez's rights violated in this case, we remand the action to the circuit court for further proceedings. The circuit court should review the security footage in camera, assuming, of course, a legitimate reason is provided for prohibiting Ramirez from viewing the tape. "When a prisoner maintains that he was denied a meaningful opportunity to present a defense due to [an AO's] refusal to consider exculpatory evidence, then procedural due process requires a [circuit] court to conduct an *in camera* review of the evidence"[36] to determine whether it was indeed exculpatory and whether, in light of the new evidence, "some evidence" existed for the AO's finding of guilt.

**31.** *See Piggie v. McBride,* 277 F.3d 922 (7th Cir.2002); *Cobbs v. Superintendent,* 821 F.Supp.2d 1071 (N.D.Ind.2011); *Hoskins v. McBride,* 202 F.Supp.2d 839, 844 (N.D.Ind. 2002).

**32.** Again, we emphasize this is entirely consistent with the DOC's Policies and Procedures, as they currently exist.

**33.** *Gaither v. Anderson,* 236 F.3d 817, 820 (7th Cir.2000).

**34.** *Ponte,* 471 U.S. at 497, 105 S.Ct. 2192 (internal quotation marks omitted). And, just like with the justification for denying witness testimony, an AO may provide, in camera, their reasoning for denying the inmate access to the video.

**35.** Providing that an inmate had a constitutional right to view exculpatory evidence

would be to apply the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to prison disciplinary cases. Given that a prisoner is not afforded the full panoply of due process rights, we see this as unwarranted and perhaps unwise. The Seventh Circuit, consistent with the overarching principle of an inmate's rights being limited, has held that *Brady* does apply but only in situations where institutional concerns would not be unduly threatened. *See Chavis v. Rowe,* 643 F.2d 1281, 1285–86 (7th Cir.1981); *Piggie v. Cotton,* 344 F.3d 674, 678 (7th Cir. 2003). Essentially, this is our ruling today. An inmate's right to actually view exculpatory evidence must bend to the legitimate concerns of the prison. But this does not mean the AO can deny out-of-hand an inmate's request.

**36.** *Felder v. McBride,* 121 Fed.Appx. 655, 656–57 (7th Cir.2004).

## III. CONCLUSION.

Jose Ramirez was found guilty and subject to prison discipline as a result of a process that failed to comport with the minimum requirements of due process. Accordingly, we must reverse the Court of Appeals. In doing so, we vacate the circuit court's denial of Ramirez's declaratory petition and remand the case to the circuit court for further proceedings consistent with this Opinion.

All sitting. All concur.