RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000320-DG

JANET CONOVER, WARDEN                                        APPELLANTS
AND
KRISTINE GOETZINGER,
ADJUSTMENT OFFICER

                    ON REVIEW FROM COURT OF APPEALS
V.                      CASE NO. 2015-CA-000039-MR
                    SHELBY CIRCUIT COURT NO. 14-CI-00550

KRISTY LAWLESS                                                  APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**REVERSING**

This is a prison discipline case involving a fight between two inmates in which a Corrections officer was injured. One of the inmates involved in the altercation, Appellee, Kristy Lawless, was disciplined as a result of the officer's injury. She appealed that disciplinary determination through the appropriate channels and eventually exhausted her appeals as a matter of right resulting in a decision by the Court of Appeals ruling in her favor. For the forgoing reasons, we reverse the decision of the Court of Appeals and reinstate the trial court's order denying Lawless' petition.

## Background

In 2014, Appellee, Kristy Lawless, and Remonia Mills were inmates at the Kentucky Correctional Institute for Women (KCIW). Mills had previously assaulted Lawless and was labeled as "maximum assaultive status." On February 24, 2014, Mills violently attacked Lawless during recreation time. Two Corrections officers, Officer Jessica Evans and Sergeant Timothy Schmid, intervened to break up the altercation. Officer Evans was injured.

Officer Evans subsequently filed a disciplinary report claiming that Lawless kicked her in the knee during the fight. As a result of the report, an investigation commenced and Lawless was charged with a disciplinary violation—physical actions resulting in death or injury to an employee. Adjustment Officer (AO), Kristine Goetzinger, conducted a hearing in March 2014. At the hearing, Lawless denied kicking Officer Evans and stated that she was merely trying to defend herself from Mills. Lawless requested that AO Goetzinger review the security video that documented the fight. She also presented statements from two witnesses. One statement was from the other Corrections officer who responded to the altercation. That officer confirmed that Lawless was attempting to defend herself and was cooperative once Mills was separated from her. The officer made no mention of Officer Evans' injury. The second statement was from another inmate claiming that she did not witness Lawless strike Officer Evans and that Lawless was as compliant as possible.

2

After considering the evidence, AO Goetzinger found Lawless guilty of the charged disciplinary offense and sentenced her to 365 days in segregation and 1,321 days of lost good-time credit. AO Goetzinger's findings state in pertinent part as follows:

> Inmate stated that Officer Evans was in the middle of breaking up the fight and is questioning how the officer could determine who caused the injury to her. Inmate states that she was compliant, just like [Sergeant Schmid's] statement is saying, but that the other inmate was not compliant . . . . Due to this report from [Officer Evans] that injury was caused from this inmate while trying to separate a physical altercation, I am going to find her guilty of this charge.

Lawless appealed to the Warden, who affirmed but reduced her punishment to 180 days in segregation and 199 days of lost good-time credit.

Lawless then filed a pro se declaration of rights action against Warden Conover and AO Goetzinger in Shelby Circuit Court wherein she argued that the disciplinary proceeding violated her Fourteenth Amendment right to due process. Approximately two weeks later, AO Goetzinger executed an affidavit stating: 1) she reviewed the surveillance video per Lawless' request; 2) nothing in the camera footage altered her determination that Lawless was guilty; and 3) that her determination was not based on the camera footage but rather on the statement of the officer (victim) regarding who injured her.

Two days later, the circuit court dismissed Lawless' petition finding that she had "received due process and there is some evidence in the record to support the finding of the adjustment officer." The court did not discuss the surveillance video which apparently was not in the record. Lawless appealed the court's decision to the Court of Appeals which, in a spilt opinion, reversed

3

the trial court's order dismissing Lawless' petition. The Court of Appeals remanded the case to the trial court and ordered the court review and consider the surveillance video. Warden Conover and AO Goetzinger (Appellants), appealed to this Court.[1]

## Standard of Review

"[P]rison disciplinary proceedings are not criminal prosecutions; and punishment is imposed as warranted by the severity of the offense in order to correct and control inmate behavior within the prison." *Ramirez v. Nietzel*, 424 S.W.3d 911, 916 (Ky. 2014). Generally speaking, due process is satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record . . . ." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985). "The primary inquiry is 'whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Ramirez*, 424 S.W.3d at 917 (citation omitted). With this minimal standard in mind, we now turn to the merits of the present case.

## Analysis

The primary issue in this case is whether Lawless' procedural due process rights were violated. That issue is squarely resolved by our holding in *Ramirez*:

> When a prisoner maintains that he was denied a meaningful opportunity to present a defense due to [an AO's] refusal to consider exculpatory evidence, then procedural due process requires a [circuit] court to conduct an *in camera* review of the

---

[1] After the parties filed their briefs, Lawless filed a motion to strike a portion of Appellants' reply brief. That motion is hereby denied.

4

> evidence to determine whether it was indeed exculpatory and whether, in light of the new evidence, "some evidence" existed for the AO's finding of guilt.

*Id.* at 920 (quoting *Felder v. McBride,* 121 Fed.Appx. 655, 656–57 (7th Cir.2004)).

In applying our holding in *Ramirez* to the present facts, it is clear that Lawless was not denied a meaningful opportunity to consider exculpatory evidence—the surveillance video. In fact, the AO submitted an affidavit specifically addressing that video. Although she executed the affidavit after she rendered her disciplinary decision, she supplemented her findings in a timely manner and in compliance with the due process dictates discussed in *Ramirez.* Any error that may have occurred here was harmless. Moreover, the AO was very clear that she based her disciplinary decision on the statement of the officer (victim). That certainly satisfies the "some evidence" standard adopted by the United States Supreme Court. *Walpole,* 472 U.S. at 454. Therefore, there was no error requiring reversal of the AO's decision.

A secondary issue discussed at length by the Court of Appeals concerns what steps the *circuit court* must take in order to satisfy due process. The Court of Appeals read *Ramirez* to *require* that the circuit court review allegedly exculpatory evidence and to document its finding based on that evidence. However, *Ramirez* makes no such pronouncement.

*Ramirez* is distinguishable from this case because "the AO denied [Ramirez's] request" to introduce surveillance-camera footage of the incident. *Ramirez,* 424 S.W.3d at 915. We held that "an AO must review security footage

5

if an inmate requests such review[.]" *Id.* at 920. The trial court's review in *Ramirez* was necessary only because Ramirez's due process right to request in camera review was denied by the AO, which was not the case here. It appears that the Court of Appeals in the present case read *Ramirez* in the context of *Foley v. Haney*, 345 S.W.3d 861 (Ky. App. 2011).

*Foley* concerned an AO's failure to review allegedly exculpatory cafeteria and medical records, and to make other necessary findings. *Id.* at 864. The court held the AO denied the inmate due process by failing to review the records. On remand, the *Foley* court ordered the AO to review the allegedly exculpatory records, indicate that he reviewed the records in his written finding, and describe whether the records confirmed or contradicted the inmate's narrative. *Id.* at 866. Because *Ramirez* was published after *Foley*, the Court of Appeals determined that *Ramirez* implicitly reaffirmed *Foley*. The Court of Appeals then extended *Foley* to apply not only to AO decisions, but also the review of those decisions by the circuit court. It is therefore necessary to clarify our decision in *Ramirez* and how it relates to *Foley*.

In order to satisfy due process, AOs must do the following when requested by an inmate to review allegedly exculpatory evidence that is reasonably accessible and available for review: 1) review allegedly exculpatory records; 2) indicate that she reviewed the records in her written finding; and 3) consider the impact of that evidence when rendering her decision. That standard was satisfied in the present case by the AO's timely execution of a supplemental affidavit.

6

For appeals before the circuit court, however, such findings are not necessary. Rather, the circuit court is required to review the allegedly exculpatory evidence in the event the AO failed to do so. In the absence of a dispute concerning whether the AO considered allegedly exculpatory evidence, "[t]he primary inquiry [of the circuit court] is 'whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Ramirez*, 424 S.W.3d at 917 (citation omitted). That standard was satisfied here.

Lastly, the Court of Appeals discussed an issue that neither party briefed—who is responsible for transmitting the record in prison disciplinary cases. The court determined that the burden was upon the Department of Corrections. Because this issue was not raised before the circuit court or by the parties, we need not discuss it here.

## Conclusion

For the foregoing reasons, we hereby reverse the decision of the Court of Appeals and reinstate the trial court's order denying Lawless' petition.

Minton, C.J.; Hughes, Keller, Venters, and Wright, JJ., sitting. All concur. VanMeter, J., not sitting.

COUNSEL FOR APPELLANTS:

Angela Turner Dunham
Justice and Public Safety Cabinet

COUNSEL FOR APPELLEE:

Heather Hodgson
Assistant Public Advocate