RENDERED: SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1098-MR

JAMES A. HALL                                                 APPELLANT


                 APPEAL FROM OLDHAM CIRCUIT COURT
v.                  HONORABLE JERRY CROSBY, II, JUDGE
                      ACTION NO. 23-CI-00665


RAVONNE SIMS, WARDEN; AND
KENTUCKY DEPARTMENT OF
CORRECTIONS                                     APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CALDWELL, JUDGE: James A. Hall ("Hall") appeals from an order of the
Oldham Circuit Court dismissing his petition for declaration of rights, arguing his
due process rights were violated when he was not permitted to present the
testimony of a witness during a prison disciplinary proceeding. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Hall is an inmate serving a sentence with the Kentucky Department of Corrections ("DOC") at the Roederer Correctional Complex ("Roederer") in LaGrange, Kentucky.

On March 14, 2023, Hall was issued a DOC disciplinary report that charged him with violation of Kentucky Corrections Policy and Procedure ("CPP") policy number 15.2, section II, subsection C, Category IV (Major Violations), Item 24 (notated in the disciplinary report form as "4-24"), which prohibits "Cruelty to animals[.]" A Roederer employee, Unit Administrator ("UA") Durell St. Clair ("UA St. Clair"), issued the disciplinary report regarding Hall. In the report, St. Clair alleged:

> On March 7th, 2023, at approximately 12:46 pm, I . . . observed inmate James Hall 309526 grab one of the black dogs by its harness and throw it approximately 3 feet while he was waiting at the main canteen. Inmate Hall then walked over to the dog and pushed it. Prior to these actions the dog was smelling a water drainage pipe. For the above reason inmate James Hall #309526 is receiving this disciplinary report.

Lieutenant Rodney Walthour ("Lt. Walthour") was initially assigned to investigate the case. The investigative report for Hall's charge documented a statement Lt. Walthour took from UA St. Clair on March 14, 2023:

> UA St. Clair stated that he observed inmates James Hall #309526 grab one of the black dogs by it[s] harness and thr[e]w it approximately three feet. We both reviewed

the camera footage of the incident and you can clear[ly] see inmate James Hall #309526 grab the dog and throw him.

Lt. Walthour spoke to Hall about the incident and informed him of the disciplinary report after taking UA St. Clair's statement. The investigative report documented that Lt. Walthour read UA St. Clair's description of the incident to Hall and inquired whether Hall wished to make a statement for the disciplinary report. Lt. Walthour documented that Hall:

stated he was just trying to keep to . . . the dog from getting hurt. He said he did not know what was in the drainpipe [and] that [was] why he pulled the dog away. He also stated that he did not want the dog in the mud. And Inmate James Hall stated that it was not three feet.

Hall was assigned Legal Aid/Staff Counsel to assist him in the disciplinary matter. Thereafter, on March 16, 2023, Hall submitted a document styled "Adjustment Hearing Witness Request" to the Adjustment Committee. The document listed three inmates as witnesses to the incident and requested they be called to provide a statement regarding the disciplinary charge. Additionally, the document listed as a witness the "Dog Program Director" Samantha Moore ("Dir. Moore") and indicated Hall wished to call her to provide a statement at the Adjustment Hearing. Regarding Dir. Moore, the document indicated Hall's: "request to have Ms. Moore provide a statement regarding the condition of the dog and whether or not the dog sustained any injuries."

-3-

The record reflects that written statements were taken from each of the three inmates Hall listed that were included in the investigative report. Regarding Hall's request to call Dir. Moore, however, Hall's request was denied. The investigative report contains a statement by Captain Jeff Hall indicating there was a determination to "den(y) [Dir. Moore] as a witness due to the incident taking place on Tuesday 3/7/2023 and [she] was not at the Institution until Friday 3/10/2023 to have any part to serve as a witness to the incident."

The Adjustment Hearing on Hall's disciplinary charge occurred on March 24th, 2023, and was presided over by Lieutenant Ella Lee ("Lt. Lee"). Hall attended in person, along with his legal aid, and gave a statement providing his own account of the incident near the opening of the hearing. Hall's testimony at that time was largely consistent with his initial statement, as taken and transcribed in the investigative report by Lt. Walthour.

Hall acknowledged he was the inmate described in UA St. Clair's description of the incident but denied he had "thrown" the dog and insisted his actions had been in the dog's best interest. Hall stated that the incident had occurred because he saw the dog near a drainpipe that was accessible to all inmates. He testified that weapons or drugs could be hidden in the drainpipe and so inmates in the Dog Program tried to keep the dogs away from it. Hall testified

that upon seeing the dog near the drainpipe, "I grabbed him by his harness, lifted him up, and released his harness at about arm's length away from me."

Hall's legal aid argued that the timeline reflected in the disciplinary report mitigated in Hall's favor. He pointed out that UA St. Clair had witnessed the incident a week prior to filing the incident report. For that entire period, Hall's legal aid asserted, the dog had remained in Hall's care. He argued that UA St. Clair would not have allowed the dog to remain in Hall's care if he had considered the incident to be cruel behavior at the time he observed it.

Additionally, Hall's legal aid made a statement for the record to note an objection to the exclusion of Dir. Moore as a witness, with an argument that she would have been able to testify that the dog had not been injured by the incident. Before finding Hall guilty, Lt. Lee referenced Hall's other requested witnesses and their statements taken during the course of the investigation and confirmed her review of them. Lt. Lee cited to UA St. Clair's staff report and the contents of the investigation, as well as her own review of the surveillance footage, in assessing Hall's guilt. At the conclusion of the hearing, Lt. Lee ordered 15 days of disciplinary segregation, 180 days of canteen restriction, and 90 days of good time loss suspended for 100 days.

Hall pursued administrative remedies to challenge his sentence. On April 25, 2023, his appeal to the Department of Corrections was denied. About

seven months thereafter, on December 28, 2023, Hall filed a Petition for Declaration of Rights in the Oldham Circuit Court.

Hall's *pro se* initiating complaint alleged he had been denied due process of law when he was not allowed to call Samantha Moore as a witness. Hall further alleged the investigation had been in violation of Correctional Policy and Procedure. The petition requested a remand of the matter back to Roederer's Adjustment Committee with an order mandating that a rehearing occur with Hall being permitted to call Dir. Moore as a witness.

Appellees moved the circuit court to dismiss the action in a pleading filed on May 22, 2024. Appellees argued that the minimal due process Hall was entitled to had been met throughout the disciplinary proceedings. Appellees also argued that any potential testimony that the dog had been uninjured would not have been exculpatory and they were, accordingly, not required to take a statement from Dir. Moore for the investigative report.

Hall filed a response to Sims' motion in June 2024. At that time, he argued he sought Dir. Moore's testimony regarding his actions that were recorded by surveillance video. Hall argued Dir. Moore would "likely" not fault his actions in the video and that she was the only person at Roederer qualified to determine whether his actions toward the dog had been abusive.

On July 31, 2024, the circuit court issued an opinion and order ("Order") granting Sims' motion to dismiss Hall's petition. The Order determined that Hall's due process rights were not violated by the exclusion of Dir. Moore as a witness and the necessary standard of "some evidence" had been satisfied. Additionally, the Order concluded that dismissal was appropriate as Hall had failed to concretely allege or present any evidence that he had suffered an actual loss of a protected liberty interest. This appeal follows. Additional facts will be developed as necessary.

## ANALYSIS

Before we conduct any analysis, we must note the appellate briefing before this Court. In this case, no Appellee brief was filed, and Appellees have taken no other action regarding this appeal. Therefore, pursuant to RAP[1] 31(H)(3), we have the discretion to decide whether to: "(a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." We urge Appellees to consider how their failure to file a brief risks our exercising the options laid out in RAP 31(H)(3). However, we do not perceive it appropriate to exercise any of the options mentioned in RAP 31(H)(3) here. The

---

[1] Kentucky Rules of Appellate Procedure.

circuit court's Order is detailed with its reasoning laid out explicitly and a relatively slim record on appeal is before us. As such, we have elected to review the appeal on its merits despite the Appellees' failure to file a brief.

Here, Hall argues the circuit court erred in dismissing his petition for a declaration of rights, arguing the circuit court failed to recognize that the denial of his request to call Dir. Moore as a witness was a violation of his due process rights. In related arguments, Hall alleges the "some evidence" standard was not met in the disciplinary proceeding and that the proceeding violated Correctional policy and procedure. His *pro se* Appellant brief additionally takes issue with the circuit court's reasoning regarding the necessity of a protected liberty interest being at issue before a circuit court may grant relief to an inmate challenging a disciplinary proceeding.

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim upon which relief may be granted "admits as true the material facts of the complaint." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quoting *Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 429-30 (Ky. 1959)). The trial court should not grant the motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved[.]" *Pari-Mutuel Clerks' Union of Ky., Local 541, AFL-CIO v. Ky. Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977). Accordingly, "the pleadings

should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." *Fox*, 317 S.W.3d at 7 (quoting *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009)). This exacting standard of review means that the trial court is not required to make findings of fact; "rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *Id.* (quoting *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002)). Since a motion to dismiss under CR[2] 12.02 presents a pure question of law, "a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*." *Id*.

The action here dismissed was Hall's petition for a declaration of rights, where he sought review and remand of a prison disciplinary proceeding, alleging violation of his due process rights. "[T]he full panoply of rights due a defendant" in criminal prosecutions "does not apply" to prison disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935 (1974). Rather, "[m]inimal due process" alone "is all that is required regarding a person detained in lawful custody." *McMillen v. Kentucky Dep't of Corr.*, 233 S.W.3d 203, 205 (Ky. App. 2007). "[P]rison officials are afforded broad discretion." *Yates v. Fletcher*, 120 S.W.3d 728, 731 (Ky. App. 2003). The

---

[2] Kentucky Rules of Civil Procedure.

minimal due process to which an inmate is entitled in prison disciplinary actions requires merely "some evidence" of guilt. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985). Accordingly, so long as the record reflects "some evidence" supporting the charge, we must affirm. *Id.* "The primary inquiry [in a prison disciplinary action] is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board[.]" *Ramirez v. Nietzel*, 424 S.W.3d 911, 917 (Ky. 2014) (internal quotation marks and footnotes omitted). "Even meager evidence will suffice." *Id.* Furthermore, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774.

**Hall Was Not Denied Due Process By The Exclusion Of Director Moore As A Witness**.

Hall argues that his due process rights, as well as applicable policy and procedure, required Roederer officials to obtain a statement from Dir. Moore during the investigation of his case and to permit Hall to call her as a witness during his hearing. To the circuit court, the Appellees argued that injury to the dog had not been at issue in Hall's charge.[3] Appellees argued that while an injury to

---

[3] We note that no Appellee brief was filed in this case. Furthermore, while we are mindful that an inmate's appeal of a disciplinary action "does not require examination of the entire record,"

-10-

the dog might have relevance to the degree of cruelty, a lack of injury was not exculpatory. Accordingly, the Appellees contended no statement from Dir. Moore was required during the investigation and exclusion of her testimony did not impair Hall's due process rights.

The United States Supreme Court has determined that a prisoner must be afforded "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense" in a disciplinary action before being deprived of a protected liberty interest. *Hill*, 472 U.S. at 455, 105 S. Ct. at 2773 (citing *Wolff*, 418 U.S. at 563–67, 94 S. Ct. 2963). An internal regulation of the DOC, CPP 15.6(II)(C)(4)(B)(2)(b), identifies circumstances under which "an investigator *shall* [i]nterview witnesses" and include the statement in the investigation. (Emphasis added.) However, "[p]rison regulations, even those which include mandatory language such as 'shall,' do not automatically confer on the prisoner an added procedural due process protection." *White v. Boards-Bey*, 426 S.W.3d 569, 575 (Ky. 2014). Furthermore, even specific violation of CPP 15.6(II)(C)(4)(B)(2)(b) by a prison official does not itself establish a violation of an inmate's due process rights. *Boards-Bey*, 426 S.W.3d at 575. Moreover, CPP 15.6(II)(C)(4)(B)(2)(b)

---

we have here found review of the record on appeal necessary to confirm the accuracy of statements contained in the Appellant brief. *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774.

itself contains a clear qualification that "the investigator shall [i]nterview witnesses, *unless a witness is clearly irrelevant to the issues presented*, and record a brief statement of what the witness reports." *Id*. (emphasis added).

The statement by Capt. Hall indicated the witness request was denied "due to the incident taking place on Tuesday 3/7/2023 and Ms. Moore was not at the Institution until Friday 2/10/2023 to have any part to serve as a witness to the incident." This reflects that Roederer officials denied Hall's request after determining Dir. Moore was clearly irrelevant as a witness to whether Hall was guilty of the offense. Nowhere in the investigative documents does there appear any description or allegation of any specific injury the dog sustained from Hall's throwing it or anything else that might have been visible to Dir. Moore several days later.

During the Adjustment Hearing, Hall's legal aid referenced the criminal charge of cruelty to animals in the second-degree as codified in KRS[4] 525.130. Hall's legal aid argued the testimony from Samantha Moore of an absence of any detectable injury to the dog would have been exculpatory. Plainly, a criminal conviction under KRS 525.130 was not before the circuit court; Hall had been found guilty of a disciplinary infraction by the DOC. Nonetheless, as correctly recognized by the circuit court, even KRS 525.130 contains no

---

[4] Kentucky Revised Statutes.

-12-

requirement that injury to an animal be proven before a defendant may be convicted of second-degree cruelty to animals.

Hall's legal aid focused on the word *injurious* in KRS 525.130(1)(a) to make an argument that a criminal conviction under the statute would require proof a defendant mistreated an animal in a way likely to cause injury. The legal aid asserted that testimony describing an absence of any visible injury to the dog would be exonerating evidence for Hall in the context of a criminal charge. Hall restates the argument to this Court.

However, examination of the word within the statute dictates that "[a] person is guilty of cruelty to animals in the second degree when . . . he intentionally or wantonly . . . [s]ubjects any animal to or causes cruel **or** injurious mistreatment through . . . tormenting . . . or by any other means[.]" *Id*. (emphasis added). Even if the criminal charge of second-degree cruelty to animals were directly at issue, Hall's argument here is misguided; culpability under KRS 525.130 is not exclusive to injurious mistreatment (since cruel treatment is also prohibited) and there is no requirement in the statute to prove the mistreated animal sustained an injury.

Hall points to nothing to indicate that the CPP disciplinary charge of cruelty to animals required any evidence the dog sustained a verifiable injury before he could be disciplined for cruelty to animals. In fact, there is no indication

*anyone* alleged the dog had sustained an injury from the incident. Furthermore, Hall did not dispute that Dir. Moore's first opportunity to examine the dog would have been several days after the incident.

"Where there is nothing in the issues presented to warrant the proof offered, it is properly excluded." *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966) (quoting 20 AM. JUR., *Evidence*, § 247, p. 241). The determination that Dir. Moore's testimony as to the dog's lack of a visible injury several days after the incident was plainly immaterial to whether UA St. Clair witnessed what he reasonably believed to be Hall being cruel to the dog. Accordingly, we cannot say the Appellees abused their discretion in excluding Dir. Moore's testimony as clearly irrelevant to the issues in the disciplinary charge.

Before us, as it was to the circuit court, Hall's argument as to why the excluded testimony was critical to his case is two-fold. The first is the allegation we have just considered, Hall's argument the testimony of Dir. Moore would have established the dog had been uninjured. Additionally, Hall alleges that Dir. Moore could have testified as an expert witness as to the manner in which he handled the dog on the video footage as being not cruel. Hall describes Dir. Moore as uniquely qualified to interpret his actions in the surveillance footage. Hall argues Dir. Moore's opinion would have negated any other interpretation, resulting in the "some evidence" standard not being met.

-14-

Hall asserts that his legal aid "stated for the record that Ms. Moore would have been able to provide a statement . . . whether or not Hall's actions amounted to cruel or abusive behavior" during the Adjustment Hearing and, in his brief, he cites to a specific time in the audio recording where he represents this occurred. However, upon our review, we locate no such statement at the indicated time or elsewhere in the audio recording of the Adjustment Hearing. We find no indication Hall ever preserved this argument by presenting it to any Roederer official prior to or during his Adjustment Hearing.[5] Accordingly, we conclude this argument was not preserved.

As Hall's argument was unpreserved, we may review only for palpable error resulting in manifest injustice. *See* CR 61.02. Hall argues that opinion testimony from Dir. Moore could have so overwhelmingly exonerated his actions that all other material cited by Lt. Lee could not be qualified as "some evidence" of his guilt. Nevertheless, we detect no palpable error resulting in

---

[5] In Hall's first administrative appeal to Warden Jessie Ferguson, he alleged that Dir. Moore had been a relevant witness "due to her evaluation of the dog's health *and her review of the institutional camera footage following the incident*." Record ("R.") at p. 29. We note no prior instance that Hall alleged Dir. Moore had any information or opinion regarding the surveillance footage of the incident. Even so, elsewhere Hall's argument to the warden regarding Dir. Moore was solely focused on the allegation she could have provided a statement as to the dog's condition, that it had been uninjured and remained in good health. Only upon filing the petition for a declaration of rights with the circuit court did Hall first clearly allege that "it is likely that Ms. Moore, the dog's owner, would not have objected to Hall's reaction." R. at 11.

-15-

manifest injustice from the absence of an expert opinion statement or testimony from Dir. Moore.

In light of Hall's own descriptions of what occurred in the incident alone, there was clearly "some evidence" of Hall's guilt that an opinion statement could not so overwhelmingly overcome. The surveillance video itself is not before us and Hall made no request that it be made an exhibit to the hearing. Nevertheless, Hall's own statements during the investigation and hearing are subject to reasonable interpretation. Hall conceded he lifted the dog by its harness into the air and dropped it to the ground. Thus, could reasonably be perceived as acting in a manner that unnecessarily inflicted physical pain on the dog.

From Hall's initial statement regarding the incident, to present, on the record before us, Hall has never asserted that his actions did NOT cause the dog physical pain or that he was carrying out any method of discipline utilized or otherwise approved by the Dog Program. It is also noteworthy that, when describing the incident during his statement at the Adjustment Hearing, Hall reported: "I grabbed him by his harness, lifted him up, and released his harness at about arm's length away from me." A person holding a dog by a harness out to arm's length and then allowing the dog to fall to the ground would cause the dog to fall a distance that reasonable persons could believe inflicts pain on the dog.

-16-

Hall argues his actions were justified because the dog could have been injured by some unknown hazard in the drainpipe. This is a reasonable explanation as to why he was initially motivated to remove the dog from the drainpipe's vicinity. However, moving the dog alone was not the substantive allegation in the disciplinary report. Hall has offered no explanation as to why lifting the dog by its harness and intentionally dropping it to the ground (at the height and in the manner he himself described) was necessary to accomplish this. Considering the discretion possessed by an Adjustment Officer, this admission alone would be an adequate basis to conclude Hall intentionally and unnecessarily subjected the dog to a cruel act.

Near the conclusion of his Appellant brief, Hall acknowledges the statutory definition contained in KRS 446.010(12). There, "as applied to animals[,]" the word 'cruelty,' "includes every act . . . whereby unjustifiable physical pain [or] suffering . . . is caused[.]" *Id.* Hall again posits that Dir. Moore might have testified that his actions in the surveillance footage were justified. Implicit in Hall's argument is a recognition that a viewer of the surveillance video could reasonably conclude his actions toward the dog caused it unnecessary pain or suffering.

Hall confirms he was informed, prior to the Adjustment Hearing, the incident had been captured in surveillance footage. Documentation of the

investigation reflects multiple persons, UA St. Clair, Lt. Walthour, and Lt. Lee, viewed the video and concluded it was evidence of Hall's guilt. The video was cited as confirming the account of UA St. Clair in the investigative documents.

However, neither Hall nor his legal aid ever argued to Lt. Lee that his treatment of the dog in the video was consistent with any method of disciplining the dog he learned from Dir. Moore or any other official overseeing the Dog Program. Through the course of the audio recording of the Adjustment Hearing, neither Hall nor his legal aid requested the video be played at any point during the hearing. At no point did Hall or his legal aid assert that Dir. Moore or any other expert might interpret Hall's actions toward the dog in the video as innocent. The Adjustment Officer cited it as among the evidence she had examined that supported her determination of guilt for Hall.

**The circuit court did not err regarding Hall's failure to sufficiently allege a protected liberty interest**.

In addition to determining that no violation of Hall's due process rights occurred, the circuit court concluded that there was no evidence attached to Hall's petition, or elsewhere, that he had suffered the loss of a protected liberty interest. While a penalty of 90 days' loss of good time was reflected, it is

-18-

undisputed Hall had received a suspended sentence and "[t]he suspension period expired prior to the filing of the Declaration of Rights complaint in this Court."[6]

As noted by the circuit court, any statutory good time lost under the disciplinary sentence may have been restored to Hall before he filed his petition with the circuit court. Per CPP 15.6(II)(B)(1)(f)(1), Hall's sentence of lost good time was to be vacated if he received no additional rule violations during the suspension period. Hall points us to nothing in the record showing us he lost any statutory good time that was not restored from this disciplinary action.

A protected liberty interest *is* implicated when an inmate receives a sentence resulting in the loss of statutory good time credits. *Wolff*, 418 U.S. at 557, 94 S. Ct. at 2975. However, when an inmate's statutory good time had been restored prior to filing a petition for a declaration of rights with the circuit court, this Court, in a non-binding unpublished opinion, has affirmed a circuit court's dismissal of the petition as moot, based upon the same reasoning as the circuit court here.[7] In attacking the circuit court's finding that he failed to present a protected liberty interest was at issue, Hall veers into an underdeveloped and misguided argument.

---

[6] Hall was sentenced in March of 2023 and filed the petition for a declaration of rights the following December.

[7] *Gray v. Dep't of Corr.*, No. 2019-CA-001386-MR, 2020 WL 5084276, at *2 (Ky. App. Aug. 28, 2020) (unpublished).

Hall now strongly implies that any lost statutory good time *was* restored to him after the suspension period and asserts that, regardless, he is hamstrung from ever proving a protected liberty interest. Hall uses this as an opportunity to present an argument for the first time—that *any* loss of good time is an unappealable sentence for inmates such as himself as he is a convicted sex offender who has not completed the Sex Offender Treatment Program. Hall argues this alleged ineligibility to receive credit for good time itself establishes a violation of his constitutional rights. He maintains criminal penalties for sex offenders are unconstitutional because such an inmate is disqualified upon sentencing from *ever* demonstrating a protected liberty interest should they be penalized with a loss of statutory good time.

Hall's criminal record is not before us. Regardless, his argument regarding the ineligibility of sex offenders to receive statutory good time is simply incorrect. KRS 197.045(4), the section Hall references, *does* require any eligible sex offender, as defined in KRS 197.410, to complete a sex offender treatment program before receiving the benefit of any good time credits from their sentence. However, this restriction "does not deprive [an eligible sex offender] of the opportunity to earn good time credit and to qualify for early parole." *Lozier v. Commonwealth*, 32 S.W.3d 511, 514 (Ky. App. 2000). Instead, KRS 197.045(4):

> merely defers the effective date of any good time credit
> which [Hall] may earn in prison until [he] has

> successfully completed a sex offender treatment program.
> Once [he] completes the program, [his] accrued good
> time credit will be credited against [his] sentence.

*Lozier*, 32 S.W.3d at 514.

Hall is not ineligible to earn good time credit as a result of KRS 197.045(4) if it is applicable to him. His argument fails to establish any violation of his rights from any hypothetical effect of KRS 197.045(4) in the current matter. Neither has he established that KRS 197.045(4) in any way relieves him of his burden to establish a loss of a protected liberty interest to seek relief in the circuit court. The circuit court did not err in concluding dismissal was also appropriate because Hall failed to sufficiently allege the loss of a protected liberty interest.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Oldham Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

James Anthony Hall, *pro se*
LaGrange, Kentucky